IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) 21-CR-411 (APM) |
| v. | ) |
| | ) Judge: Mehta |
| STEWART PARKS, | ) |
| | ) Sentencing Date: 11/15/23 |
| Defendant. | ) |

**DEFENDANT STEWART PARKS'S
MEMORANDUM IN AID OF SENTENCING**

**COMES NOW** Stewart Parks, through counsel, and submits the following memorandum in aid of sentencing.

## Background

On June 21, 2021, Stewart Parks was charged with five counts via information: (1) Entering and Remaining in a Restricted Building, in violation of U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); (3) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); (4) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G); and (5) Theft of Government Property, in violation of 18 U.S.C. § 641.

Since June 9, 2021, Mr. Parks has been on his personal recognizance with release conditions during the entire time that this matter has been pending. He has attended all court appearances, both in person and via online hearings. He has been and continues to be fully compliant with his release conditions.

On May 1, 2023, Mr. Stewart Parks had a bench trial in this matter on all five counts before this Honorable Court. The trial was in person and lasted three (3) days, with two (2) days of testimony and argument and a verdict issued on the third day. After the conclusion of the evidence on May 3, 2023, the court found the defendant guilty of all five counts, and a sentencing date was scheduled for August 25, 2023. The sentencing date was continued and is currently scheduled for sentencing on November 15, 2023. In anticipation of sentencing, the preparation of a Presentence Investigation Report (PSR) was ordered, and the final PSR was prepared on September 27, 2023.

Stewart Parks also had a codefendant in this matter, Matthew Baggott. On April 5, 2022, Matthew Baggott pled guilty to Count Two of the Information, to one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 USC § 1752(a)(2). On August 5, 2022, this court sentenced Mr. Baggott to three months incarceration and 12 months supervised release.

## Argument

### A. Statutory Penalties

The penalty for Count 1, Entering and Remaining in a Restricted Building, in violation of 18 USC § 1752(a)(1), is 1 year imprisonment and/or a $100,000 fine. The penalty for Count 2, Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 USC § 1752(a)(2), 1 year imprisonment and/or a $100,000 fine. The penalty for Count 3, Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 USC § 5104(e)(2)(D), is 6 months imprisonment and/or a $5,000 fine. The penalty for Count 4, Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC § 5104(e)(2)(G), is 6 months imprisonment and/or a $5,000 fine. The penalty for Count 5, Theft of Government Property, in violation of 18 USC § 641, is 1 year imprisonment and/or a $100,000 fine. Since they are Class B misdemeanors, the U.S. Sentencing Guidelines do not apply to Counts 3 and 4. *See* USSG §1B1.9.

### B. Mr. Parks' Actions on January 6, 2021

The date of January 6, 2021, will forever be remembered in American history as a day in which the foundations of our democracy were shaken. There were many individuals who caused physical damage, assaulted police officers, and in many other ways disgraced the hallowed halls of the U.S. Capitol. However, Stewart Parks was not one of those individuals. His crime is based upon his

entering the U.S. Capitol and walking around public areas within the Capitol with his codefendant Matthew Baggott for approximately forty-five (45) minutes. At no time does the evidence provided at trial allege that he was violent, was chanting political statements, or had damaged any property. He and Mr. Baggott followed police orders and did not proceed in areas when stopped by police officers, and later exited when told to do so by police officers.

On the morning of January 6, 2021, Defendant Stewart Parks and his codefendant Matthew Baggott traveled from Nashville, Tennessee, to the Baltimore/Washington Airport (BWI) in Maryland. They rented a car and drove down to Washington, D.C., to attend the "Stop the Steal" rally in support of then-President Donald J. Trump. They arrived at downtown Washington, DC, at approximately 1:30 p.m., which was after President Trump had given his speech at the Ellipse near the White House. Mr. Parks and Mr. Baggott, along with many other attendees, then walked down to the U.S. Capitol grounds to the West Plaza of the U.S. Capitol, where there were officers preventing people from proceeding onto the U.S. Capitol. During that time period, Mr. Parks saw teargas being utilized. At this time, Mr. Parks posted on his Instagram account a picture with the caption, "They're gassing us." The police lines were eventually broken by the attendees, including Mr. Parks and Mr. Baggott, and they proceeded towards the U.S. Capitol Building.

Mr. Parks and Mr. Baggott worked their way through the scaffolding that was set up on the west side of the U.S. Capitol. At that time, he posted another Instagram message stating "We're getting in." Mr. Baggott and Mr. Parks worked their way up to the Upper West Terrace. While in the Upper West Terrace, they eventually arrived at a door of the U.S. Capitol Building on the Senate side. At that door, there was an accumulation of people who were attempting to enter. At that time, while, admittedly, there was broken glass and windows, there were no signs that indicated that there was no entry through those doors. Those doors were eventually forced open by individuals other than Mr. Baggott and Mr. Parks, and the two of them entered the U.S. Capitol through that door shortly afterward. When he entered the U.S. Capitol, Mr. Parks was carrying a Gadsden Flag, a yellow flag which depicted a snake with the words "Don't Tread on Me" on it.

While in the U.S. Capitol, Mr. Parks and Mr. Baggott travelled to various parts of the building, including the Ohio Clock Corridor, the Will Rogers Hallway, and the Upper House Door entry area. During their travels around, Mr. Baggott oftentimes led the way, with Mr. Parks following closely behind and/or Mr. Parks regularly holding onto Mr. Baggott. Prior to exiting the interior of the building, Mr. Parks picked up a handheld wand used by security guards and exited the building. Mr. Parks indicated in his testimony that he left the wand on the ground close to the doors. Though there was no visual confirmation one way or the other via video

obtained on that day, the parties stipulated no wand was reported missing or stolen on January 6, 2021.

### C. Challenges to Sentencing Guideline Calculations

With regard to the guideline calculations, the defendant takes no issue with the criminal history category of I. The defendant further does not dispute the base offense level of 10. However, the defendant objects to the +2 adjustment for Adjustment for Obstruction of Justice pursuant to USSG §3C1.1. PSR at ¶ 52. He has been fully compliant with his release conditions and there has been no suggestion of any impropriety or efforts to impede this case on his part.

Accordingly, the PSR author, therefore, appears to be basing this "obstruction of justice" entirely on the fact that Mr. Parks exercised his constitutional right to a trial and chose to take the stand and testify. However, his testimony does not rise to the level that would indicate that he gave any falsehoods or intentionally lied during his trial testimony. He was consistent in his responses between direct and cross-examination,

Under the Sentencing Guidelines, a defendant commits perjury and obstructs justice under U.S.S.G. § 3C1.1 24 if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of mistake or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993)(cited in United States v. Gaviria, 116 F.3d 1498, 1518 (D.C. Cir. 1997)).

Furthermore, the district court must find willful perjury by clear and convincing evidence. United States v. Montague, 40 F.3d 1251, 1254 (D.C.Cir.1994). In this case, the court should not make such a finding. In making its findings of fact, the court only indicated it did not credit Mr. Parks' testimony, exclusively dealing with issues on state of mind. At no time in its finding, and indeed at no time in the trial, was there any indication that Mr. Parks said something that was false, where the court believed some other testimony of another (government) witness that the court believed was true.[1] Thus, the court therefore should not find by clear and convincing evidence that any alleged falsehood said by Mr. Parks in his testimony was based upon intentional falsehood or perjury, as opposed to his perception of his events upon reflection two years after the event itself. Accordingly, the court should deny the two-point enhancement based upon USSG §3C1.1.

Should the court determine that the PSR calculation is correct of Criminal History I and Total Offense level of 14 is correct, Mr. Parks would ask that the court sentence him to a lesser sentence pursuant to the factors under 18 U.S. § 3553(a), as discussed below. In addition, Mr. Parks would ask for the probationary and/or jail sentences to run concurrently with each other.

---

[1] Admittedly, the court, in reaching its verdict, indicated that Mr. Parks' testimony was "charitably, charitably not credible, and at worst, was a pure fabrication. Mr. Parks would respectfully suggest that, when considering the delay of time from the event to the trial itself, it is more likely the former and not the latter.

**D. Statutory Sentencing Factors under 18 U.S.C. § 3553(a)**

As this court knows, in <u>United States v. Booker</u>, 543 U.S. 220, 264 (2005), the Supreme Court indicated that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." <u>Booker</u> further indicated that the purpose of the guidelines was to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'"<u>Booker</u>, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)).

Given the factors under 18 U.S.C. § 3553(a), this court should consider the following: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment,affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need for the sentence to avoid unwarranted disparities among defendants with similar records convicted of similar conduct. *See* 18 U.S.C. § 3553(a).

1. **Nature and Circumstances of the Offenses**

As described above, Mr. Parks' actions on that day did not involve any violence, destruction, disrespect to lawful authorities, or even any inflammatory

political speeches or actions. He followed police directives and requests both on January 6th, by officers at the Capitol, and left with Mr. Baggott when he was told to do so. He was not disrespectful and indeed, during his testimony, Mr. Parks testified of his reverence he had to the U.S. Capitol on that day. Indeed, this is quite contrary to the actions of other individuals in the U.S. Capitol on January 6th. At no time is he seen on the videos provided by the government as chanting or participating in any political rhetoric. He also exited and followed orders by officials in the U.S. Capitol and spent less than 45 minutes in the building. He returned back to his home and has not been alleged to have participated in any anti-government political events since.

   2.    **Defendant's History and Characteristics**

Mr. Stewart Parks is currently 30 years old. He was 29 years old at the time of the offense. He has no prior criminal charges or convictions, either as an adult or as a juvenile. He received his General Education Diploma (GED) in 2011. He attended Volunteer State Community College in Gallatin Tennessee from 2011 to 2013. He then transferred to the University of Mississippi and graduated with a Bachelor of Arts in Economics in 2016.

After graduation, he entered the realm of real estate. He has multiple businesses in this area. He owns Parks International Capital, an investment and

development company. He also owns four real estate development companies in Nashville, Tennessee. He also owns a construction brokerage company named Parks International Management.

Mr. Parks is businessman who, along with his family, is involved with his community and church. He works in the real estate business in various aspects and is the sole proprietor of his own business and works in the area of real estate. He has political aspirations and actually ran for political office in Tennessee.

Perhaps the best example of the upstanding and respected citizen is that Mr. Parks can be shown by the genuine words of his friends, business associates, and family. In support and in anticipation of his sentencing, Mr. Parks has received an incredible outpouring of support from many of these individuals.[2] The twenty-one (21) letters provided along with this memorandum all speak to the excellent character of Mr. Parks. They are included as exhibits attached to this memorandum and are incorporated herein. They include the following:

> Exhibit A: Letter from Alan Siliski
> Exhibit B: Letter from Allison Walters
> Exhibit C: Letter from Arlene Bragg
> Exhibit D: Letter from Barry Baggott
> Exhibit E: Letter from Carol McCord

---

[2] In accordance with local rules, the personal information of the letters has been redacted from the copies being filed. However, a separate, unredacted copy will be sent to the government and to the court directly.

Exhibit F: Letter from Cary Allen

Exhibit G: Letter from Cheryl Schou

Exhibit H: Letter from Christopher Parks

Exhibit I: Letter from David Parks

Exhibit J: Letter from Donna Wilson

Exhibit K:  Letter from Eric Hunter Warden

Exhibit L: Letter from Garrison Parks

Exhibit M: Letter from Karley Adams

Exhibit N: Letter from Logan McKee

Exhibit O: Letter from Mary Kay Wilson

Exhibit P: Letter from Mary Taylor

Exhibit Q: Letter from Nicholas Meyer

Exhibit R: Letter from Reverend William Parks

Exhibit S: Letter from Rhonda Sizemore

Exhibit T: Letter from Richard Warden

Exhibit U: Letter from Thomas and Lisa Parks (with Attachments A and B)

All these letters speak in different ways of the respectful, kind behavior of Mr. Parks, in the town in which he resides in Missouri. The letters include people who have known Mr. Parks from all walks of life, among them family, friends, business associates. Many of them speak to his law-abiding nature and that his actions on January 6th are not a reflection of Mr. Parks' normal behavior. Among the adjectives that are used to describe Mr. Parks are "kind," "respectful," "considerate," "hardworking," "well disciplined," "thoughtful," "proactive," "educated," and "easy going." Many of the letters talk about his

commitment to the church and Christian values. Several discuss how he is a hardworking individual committed to his real estate business. Additionally, most contrast his personality as not one who would have intentionally taken actions against the government, but rather as someone who made a bad choice on that day and as someone who is remorseful for his actions.

    Further, the defense would bring to the court's attention the letter and attachments from his parents, Thomas (Steve) Parks and Lisa Parks, which is attached hereto as Exhibit U with Attachments A and B. The letter and attachments discuss Mr. Parks' physical ailments with his eyes and ears. They describe and provide limitations on his vision and hearing, providing evidence of hearing issues (Mr. Parks uses a hearing aid), and vision issues, such as tunnel vision and lack of peripheral vision. Respectfully, these two issues may be relevant to this case for two reasons. First, this would explain why Mr. Parks, as seen in the videos and photos, was immediately behind Mr. Baggott as they were proceeding through the U.S. Capitol, often holding onto him. Second, while this is not to suggest that these factor rise to the level of suggesting Mr. Parks is not guilty of the charges, this could provide at least some explanation, particularly due to his peripheral vision issues, as to why Mr. Parks may not have picked up onto the many "cues" that things were amiss and as volatile as others may have observed while within the U.S. Capitol.

### 3. Punishment to Afford Adequate Deterrence, and Protect the Public

Mr. Parks understands that this Honorable Court has found him guilty of the charges. Just as he has respect and reverence for our country, he also has a respect for the authority of the court. Indeed, he has shown his respect for the court by being fully compliant with his release conditions. He has attended every court hearing, both online and in person. In short, Mr. Parks has shown his respect for the court with his actions. He intends to fully cooperate with the decision of the court and will comply with whatever conditions are placed upon him. Finally, his lack of criminal record and no violations of his release condition or other laws further show Mr. Parks' respect for the law. Mr. Parks has always been a law-abiding citizen and had never been cited for anything greater than a traffic offense prior to this case.

Mr. Parks would also suggest that, given the sum of his actions, an extended probationary sentence is a just punishment. Mr. Parks will now have a criminal record and will presumably remain under the supervision of the court for an extended period of time. Mr. Parks was nonviolent during his time both outside and within the U.S. Capitol and did not commit any actions which would suggest that he was seeking to disrupt the electoral process in any way, other than with his presence. Admittedly, his presence in the U.S. Capitol, like many hundreds of others who were within the U.S. Capitol, created a *de facto* delay in the voting

process. His involvement on January 6th, however, should therefore be distinguished from other participants, who were much more violent and/or destructive. Accordingly, Mr. Parks should be punished for his unlawful entry into the Capitol, but his actions do not suggest a lawlessness that is a perpetual problem, or one that calls for incarceration.

Finally, the need to protect the public from Mr. Parks should, respectfully, be of little to no concern. Mr. Parks has not provided any suggestion that he is a danger to the public, either before January 6, 2021, or after. Even his actions inside the U.S. Capitol do not suggest any fervent political agenda or safety concern to the public. Mr. Parks has shown that he can abide by the law in both his cooperation after his arrest, lack of any other criminal record, and full compliance with release conditions.

### 4. Need to Avoid Unwarranted Sentencing Disparities

The court undoubtedly wishes to avoid disparities between defendants who have been convicted of these misdemeanors that have been applied to individuals who entered the U.S. Capitol and did not cause any damage. In the large majority of the January 6th defendants who have been sentenced to these misdemeanor offenses, it appears that most have received a fully probationary sentence, with about a third of those individuals receiving a limited amount of home confinement. Accordingly, Mr. Parks would respectfully request that a sentence of probation is

appropriate in his case. There is nothing in the actions of Mr. Parks that would necessarily suggest that his actions had any aggravating circumstances to justify a non-probationary sentence or even home confinement.

While the government may suggest that Mr. Parks' choice to go to trial should be a reason not to be treated similarly to other January 6th misdemeanants, the defense would respectfully suggest that that issue has already been considered as part of his sentence in that Mr. Parks did not and will not be receiving a reduction for acceptance of responsibility. The defense would respectfully suggest that his actions on January 6th were the same, if not, even less egregious that others, where it does not , followed police direction as soon as he was given an order, and even tried to discourage lawlessness of others. Accordingly, Mr. Parks should be sentenced similarly to other similarly situated misdemeanants. Furthermore, Mr. Parks' actions, when viewed via videos, show that Mr. Baggott was usually leading the way, with Mr. Parks following closely behind or even holding onto Mr. Baggott. Accordingly, Mr. Parks' actions appear to be less than those of Mr. Baggott, who received three (3) months incarceration. Accordingly, a probationary sentence, perhaps of an extended period of time, would be sufficient.

While acknowledging that Mr. Parks had a theft charge as well, the defense would submit that this should not make any difference as to an appropriate sentence. While it is clear that a theft technically occurred, as there was asportation

of the wand, there is no evidence, and indeed evidence to the contrary via stipulation, that the U.S. Capitol was ever deprived of the item itself and, under the circumstances, the use of the wand at that time. Accordingly, this charge should not affect the court's determination of what would be a just sentence under the circumstances.

Given all the aspects of Stewart Parks - his lack of criminal record, his compliance with his pretrial conditions, his nonviolent behavior within the U.S. Capitol, his employment – Mr. Parks would respectfully request a fully probationary sentence with hours of community service if the court feels it is appropriate. This has been a valuable lesson and is one to never be repeated. Mr. Parks has shown through his actions that he is respectful of the court's authority and that he has a low chance of recidivism. As he has already done, he will comply with all conditions placed upon him. A probationary sentence would also allow him to continue to provide for his family and maintain his employment and assistance in the community. Should the court believe that some level of detention is necessary, Mr. Parks would respectfully ask that he be allowed to serve it in the form of home confinement.

Should the court feel that a short period of incarceration is required (which we obviously hope is not the case), we would ask for the court to allow it to be served as close to his residence in Tennessee as possible. Mr. Parks would also

request for his sentences and/or probation to run concurrently, as they arise from the same incident. Mr. Parks would further request that he be allowed to report to serve his sentence and remain on his personal recognizance in the meantime.

WHEREFORE, for the reasons stated above, Defendant Stewart Parks respectfully requests a full probationary sentence and community service if the court deems it appropriate.

Respectfully submitted,

STEWART PARKS
By Counsel

/s/ John L. Machado
John L. Machado, Esq.
Bar. No. 449961
Counsel for Stewart Parks
503 D St, NW, Suite 310
Washington, DC 20001
Phone: (703) 989-0840
E-mail: johnlmachado@gmail.com

## Certificate of Service

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 13th day of November, 2023, which will send a notification of such filing (NEF) to the following to allcounsel of record.

/s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Stewart Parks
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com