UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | No. 21-cr-411 (APM) |
| | : | |
| **STEWART PARKS,** | : | |
| | : | |
| **Defendant.** | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR RELEASE PENDING APPEAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Stewart Parks's Motion for Release Pending Appeal (ECF No. 111), which is in effect a motion for bond pending an appeal of the extent of the defendant's knowledge required to be proven under 18 U.S.C. § 1752, two subsections of which Parks was convicted of violating following a bench trial. Bail is not justified in Parks's case, because Parks cannot establish by clear and convincing evidence that he does not pose a danger to the community or that his appeal will raise a substantial question likely to result in reversal, a new trial, or a shorter sentence on all counts of conviction, as required under 18 U.S.C. § 3143(b). Accordingly, the motion should be denied.

I. BACKGROUND AND PROCEDURAL HISTORY

On June 21, 2021, Parks was charged by Information with five offenses: violations of 18 U.S.C. §§ 1752(a)(1) and (a)(2), 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G), and 18 U.S.C. § 641. ECF No. 15. On May 3, 2023, Parks was convicted of all counts following a bench trial. On November 15, 2023, Parks was sentenced to the following:

> **Counts One, Two, and Five – 18 U.S.C. § 1752(a)(1) and (2), 18 U.S.C. § 641:** Eight months of incarceration each, to run concurrently, followed by twelve months of supervised release to run concurrently.

**Counts Three and Four – 40 U.S.C. § 5104(e)(2)(D) and (G):** Six months of incarceration each to run concurrently.

*See* ECF No. 105.  On November 29, 2023, the defendant filed a notice of appeal.  ECF No. 107. He is currently scheduled to report to the Bureau of Prisons on February 6, 2024.  Parks now moves for bail pending the resolution of his not-yet-filed appeal arguing that, in order to establish any violation of 18 U.S.C. § 1752, the government must prove that the defendant knew that the Capitol grounds were restricted on January 6, 2021 because the Vice President was or would be visiting. ECF No. 111.

## II.     LEGAL STANDARD

Parks moves for release pending appeal under 18 U.S.C. § 3143(b).  Under Section 3143(b), a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the court finds that two separate requirements are met:

>  (1)     "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and
>  (2)     that the appeal "raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B).  A substantial question is "a 'close' question or one that very well could be decided the other way." *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). The requirements for "reversal" and "an order for a new trial" encompass all counts, not just a single count.  *Id.* at 557 (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis supplied).  If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of

2

the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B). It is the defendant's burden to make the requisite showing under 18 U.S.C. § 3143(b)(1)(B). *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

### III.    ARGUMENT

#### A. Parks Has Not Shown by Clear and Convincing Evidence That He Is Not Likely to Pose a Danger to the Safety of the Community

Parks fails to make the required showing for release. Parks is unable to show by clear and convincing evidence that he is not likely to pose a danger to the safety of the community, especially in the volatile context of the upcoming election year. Although he has been complaint with the terms of his release, and Parks himself did not engage in hands-on violence on January 6, 2021, Parks's illegal acts on January 6, 2021 were brazen. He ignored the obvious indications that his presence on the Capitol grounds was unauthorized – including tear gas, police officers in riot gear, and physical barricades – and placed himself at the front of the angry and violent mob that descended on the Capitol building. He and a friend watched as rioters overran a line of police officers and smashed the windows adjacent to the Senate Wing Doors to gain entry to the building. As an alarm blared, he entered the building and remained there, watching as rioters confronted police officers and parading through different areas, for approximately 45 minutes, until he was forced to exit by police officers.

At trial, Parks testified falsely: He claimed to have entered the Capitol building because he was looking for speakers he believed were authorized to hold events there. Trial Tr., May 2, 2023, at 296:7-8, 301:17-19. He disclaimed any knowledge or observation of the various security

3

measures that law enforcement undertook on January 6, despite filming many of them himself, *id.* at 288-289, and testified that police officers had let him into the building, *id.* at 299:19-34. Further, Parks claimed to have realized that he should not be inside the Capitol building shortly after entering and then quickly began looking for an exit. *Id.* at 306:11-15. In fact, he walked straight past an available exit – the same one he entered the building through – and spent an addition 30 minutes inside. In short, he demonstrated a flagrant disrespect for this Court and the legal process.

Not only has Parks failed to accept responsibility for his conduct on January 6, even following his conviction and sentencing, he continues to disseminate the false narrative that he was part of a peaceful protest and was let into the Capitol building by law enforcement and to accuse the Court of improper bias. *See Behind the Conviction: Stewart Parks' Legal Ordeal and the Fight for Truth in J6 Capitol Trespassing Case*, Dec. 21, 2023 (*available at* https://michaelpatrickleahy.com/behind-the-conviction-stewart-parks-legal-ordeal-and-the-fight-for-truth-in-j6-capitol-trespassing-case/) (hereinafter "*Behind the Conviction*"); *J6 Defendant Stewart Parks Plans Last Minute Appeal as Eight-Month Prison Sentence Nears*, Jan. 16, 2024 (*available at* https://michaelpatrickleahy.com/j6-defendant-stewart-parks-plans-last-minute-appeal-as-eight-month-prison-sentence-nears/) (hereinafter "*Parks Plans Last Minute Appeal*.").

In sum, although the defendant appears to have been compliant with his release conditions, Parks's actions on January 6, 2021, his false testimony at trial, and his actions since January 6, 2021 all paint the picture of someone who presents real concerns regarding the need for specific deterrence and preclude a finding, by clear and convincing evidence, that Parks is not likely to pose a danger to the safety of the community if his surrender is further delayed. For that reason alone, Parks's motion should be denied.

### B. Parks Has Not Identified a Substantial Question for Appeal That Is Likely to Result in a Reversal, Retrial, or Shorter Sentence on All Counts.

Parks also fails to meet the second prong of the Section 3143(b) inquiry: he has not shown that his appeal "raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process" on *all* counts.

*First*, Parks's proposed challenge regarding the elements of the Section 1752(a) counts is not "likely to result in" reversal of his convictions on those counts (and thus is not "likely to result in . . . a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process[.]") Regardless of the merits of his legal argument regarding the knowledge required to violate Section 1752(a) – which is currently the subject of litigation in the D.C. Circuit in *United States v. Griffin*, No. 22-3042, and was most recently addressed by the government in *United States v. Irwin, et al.*, 21-cr-589 (RDM), ECF No. 102 – Parks did not object to the Court's legal instruction at trial, *see* Trial Tr., May 3, 2023 at 455, 462-63, and thus any challenge to that instruction on appeal will be reviewed for plain error. See *United States v. Johnson*, 592 F.3d 164, 169 (D.C. Cir. 2010) ("Our review is for plain error because Johnson did not object to this portion of the instruction."). Under that test, "it is the defendant's burden to show not only that the error was obvious, but also that it prejudiced him." *Id.* And if Parks proposes instead to challenge the sufficiency of the evidence of his knowledge, he bears the "heavy burden" to establish that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational juror could have found the elements of the crime beyond a reasonable doubt." *United States v. Borda*, 848 F.3d 1044, 1053 (D.C. Cir. 2017) (quotation marks omitted).

Here, as an initial matter, Parks cannot show that any error in this Court's instruction on the Section 1752(a) counts is plain. As the D.C. Circuit has explained, when "there is no precedent of the Supreme Court or this court requiring a district court to give a" particular instruction, "the district court's failure to do so cannot constitute plain error." *United States v. Brown*, 892 F.3d 385, 393 (D.C. Cir. 2018). And even if Parks could establish an error that is plain, he cannot establish prejudice (for purposes of plain-error review) or that no juror could have found the requisite knowledge (for purposes of sufficiency review).

Indeed, the government's evidence at trial established that Parks knew the Vice President would be at the Capitol that day. Parks traveled to Washington, D.C., in order to attend the "Stop the Steal" rally, GX 531 – where the former President referenced the certification proceeding set to happen at the Capitol that day – and Parks testified at trial that, on January 6, 2021, he knew that "the House and the Senate would be meeting and they would be moving forward with the election result from 2020." Trial Tr., May 2, 2023 at 137. It would defy logic to suppose that someone who, in January 2021, understood that the certification proceeding was set to happen at the Capitol on January 6, 2021, and who travelled from Tennessee to Washington, D.C. to take part in protesting and then blocking that proceeding, was somehow oblivious to the fact the person presiding over that preceding, the Vice President, would also be present.

*Second,* Parks was convicted of three other counts that would be unaffected by this appeal. He therefore cannot show that a decision in his favor on this is likely to lead to reversal, an order for a new trial, or a non-jail sentence on all counts. Nor does Parks show that a decision in his favor is "likely" to lead to "a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process," given his three other counts of conviction.

6

Parks asserts that, in absence of a conviction on Counts One and Two, there is "every reason to think" that a sentence of little to no incarceration would be imposed. ECF No. 111 at 15–16. This is not the case. Parks focuses solely on a fifteen-minute period when he picked up and carried around a United States Capitol Police metal detector hand wand – the conduct underlying Count Five. But he fails to reckon with additional aggravating and incredibly serious conduct that informed the sentence that the Court imposed and which also forms the basis of Counts Three and Four – conduct that would be no less relevant if Counts One and Two were vacated. This includes Parks working his way toward the Capitol building from the West Plaza during one of the most violent, chaotic portions of that day on Capitol grounds. Trial Tr., May 3, 2023 at 444-445. As he slowly made his way to the Capitol building, Parks stood feet away – and filmed – as rioters fought against officers, overran police line after police line, and eventually made their way to the Senate Wing Doors, where he saw other rioters smash out windows, crawl through, and kick open the door. *Id*. at 445-449. He entered the Capitol building less than a minute after its initial breach then spent 45 minutes striking a path across the entirety the building, until he was forced out by police. *Id*. at 449-453. In imposing sentence, this Court described how "remarkable" Parks's path was; remarking that Parks had placed himself at a "trifecta" of uniquely consequential events inside the Capitol building during the breach: (1) the initial breach of the Capitol building at 2:13 p.m. through the Senate Wing Door, which led to both chambers adjourning; (2) the confrontation between rioters and police at approximately 2:16 p.m. in the Ohio Clock Corridor where rioters nearly breached the Senate Chamber while Senators sheltered inside; and (3) the confrontation at 2:35 p.m. at the opposite end of the building, where rioters nearly breached the House Chamber while Congressmembers likewise sheltered inside.

Parks also fails to consider the impact his contemporaneous statements had on the sentence. He documented his path up to and through the building on Instagram, where he repeatedly made light of the violence and chaos of the riot. For example, upon being ejected from the Capitol building, he posted: "The party was fun until the SWAT showed up." Trial Tr., May 3, 2023 at 454:6; GX 531. Worse still, Parks then attempted to eliminate incriminating evidence by deleting his Instagram account, while coyly informing others that he had photos and videos from January 6 to share with them. Trial Tr., May 3, 2023 at 454:7-23; GX 508, 509.

Finally, Parks overlooks a separate consideration by the Court critical to the sentence it imposed: the remarkably brazen and abundant lies Parks spun at trial while under oath.[1] Time and again, Parks showed his complete lack of contrition and his disrespect for the rule of law through his testimony. He lied about seeing continuous violence against police as he worked his way toward the Capitol, in clear contradiction to his own words and recordings captured on his Instagram. He lied about entering the Capitol through open doors with no indication he should not enter, in clear contradiction to video evidence showing Parks feet away from rioters as they smashed windows, crawled inside and kicked open the Senate Wing Doors, triggering a loud alarm that blared as he entered. And he lied about beginning to "actively" look for a way out of the building just minutes after entering, in clear contradiction to security camera footage showing him stroll by his original point of entry and continue deeper into the building for another half hour.

---

[1] When calculating the U.S. Sentencing Guidelines range, the Court found that the two-point "Obstruction of Justice" enhancement under U.S.S.G. § 3E1.1 was triggered by Parks falsely testifying at trial and by Parks deleting evidence from his Instagram, but it found that this enhancement did not apply to Count Five, charging a violation of Section 641, because the false testimony and evidence destruction did not relate specifically to the theft of the hand wand. But Parks's lies on the stand and his deletion of evidence are nonetheless relevant to all five counts of conviction even if they are not incorporated into the recommended Guidelines range as a sentencing enhancement.

8

These and other misrepresentations were flagrant enough to prompt the Court to say to Parks: "I don't know whether you take me for a fool[.]"  Trial Tr., May 3, 2023 at 458:20.

The Court in its verdict concluded with an admonishment to Parks: "Everybody has a right to exercise their right to a trial and to hold the government to its burden of proof, but what they do not have the right to do is to get up and spin a tale that has no foundation in fact and that is an affront to the police officers that were there that day and to the democracy itself, and that's what you did."  Trial Tr., May 3, 2023 at 473:17–22.  At sentencing, the Court found that these lies—which Parks also told while running for Congress in 2022—demonstrated the need for a substantial sentence to promote respect for the rule of law, given Parks's abject failure to accept any responsibility for his conduct that day.[2]

---

[2] Far from expressing remorse for his actions on January 6 or his misleading statements about his conduct, Parks has doubled down on these falsehoods.  He continues to maintain that his presence at the Capitol was peaceful and that police officers let him in.  *See, e.g., Behind the Conviction:* ("So we peacefully walked in, you know, there wasn't a stampede or anything like that.  Just, you know, a normal walk in the building.  And then shortly after, the Capitol Hill Police was right there and they made statements to me such as 'We're here,' 'We're with you,' 'We understand you,' and so forth and so on.  Never once do they tell me to get out"); *id.* ("never once was anybody coerced; police officers weren't intimidated.  They weren't frightened.  But then, you know, I'm already seeing a pattern of police letting me move forward without saying anything"); *Parks Plans Last Minute Appeal* ("I was peacefully present – went to January 6th.  Police let me in").  He continues to paint himself as a victim and sow seeds of dissention and unrest by claiming that this Court's verdict and sentence were politically motivated.  *See, e.g., Behind the Conviction* ("[The judge] went the political route and found me guilty of all charges;" "they have a prejudice against Trump-supporting Christian, conservative, pro-American people"); *Parks Plans Last Minute Appeal* ("this judge definitely has it out for me to get me in jail, give me the punishment . . . this judge and this D.C. swamp judicial system want to punish me"); *Former TN GOP Candidate Stewart Parks, Sentenced to 8 Months on Jan. 6, 2021 Conviction, Claims Obama-Appointed Judge 'Colluded' with Prosecutors*, The Star News Network, Nov. 20, 2023 (*available at* https://thestarnewsnetwork.com/2023/11/20/exclusive-former-tn-gop-candidate-stewart-parks-sentenced-to-8-months-on-jan-6-2021-conviction-claims-obama-appointed-judge-colluded-with-prosecutors/) ("[The judge] colluded, he coached, he blatantly sided and was open-armed with the prosecution").

All of these factors would apply with equal force to a conviction on three counts as they did to Parks's conviction on five counts, and justify the imposition of the same sentence.

In any event, even if the Court believes that it is "likely" that the defendant would be resentenced to less than eight months, the remedy is not stay his incarceration entirely. Instead — and unlike with release based on a reversal, likelihood of trial, or non-jail sentence—the statute directs the Court to order the defendant released only once he has served the amount of time he is likely to serve upon resentencing, not immediately. 18 U.S.C. § 3143(b)(1)(B) ("in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the likely reduced sentence*") (emphasis supplied). Therefore, to release defendant based on the likelihood of a reduced sentence, the Court must calculate that reduced sentence, and defendant must still serve that amount of time before being released pending appeal. *See, e.g.,* May 25, 2023 Order, *United States v. Brock,* D.C. Cir. Case No. 23-3045 (denying motion for release pending appeal in January 6 case where "the district court did not specifically address what appellant's "likely reduced sentence" would be if his conviction under 18 U.S.C. § 1512(c) is reversed. Nor has appellant made that showing…").

For all these reasons, the defendant's motion to stay his self-surrender date should be denied.

                                        Respectfully Submitted,

                                        MATTHEW M. GRAVES
                                        United States Attorney
                                        D.C. Bar No. 481052

    By: