UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | Case. No. 21-cr-411-1 (APM) |
| ) | |
| STEWART PARKS ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR RELEASE PENDING APPEAL

Stewart Parks, through undersigned counsel, submits the following reply to the government's response filed on January 29, 2024. Dkt. 112. There is a serious risk that Mr. Parks will significantly overserve his sentence absent this Court's intervention. Importantly, the government does not contest that Mr. Parks's appeal raises a substantial question of law. Instead, it argues that (1) Mr. Parks presents a danger to the community—a contention affirmatively disproven by his behavior in the many months since his arrest and his lack of any history of violence; (2) that Mr. Parks will lose his appeal—an argument based on a misunderstanding of the appellate standard of review; and (3) that on resentencing, this Court likely would sentence Mr. Parks to the same eight-month sentence, despite the significantly lower Guidelines range he would face. None of these arguments is persuasive.[1]

---

[1] On page 2 of its opposition, the government confusingly states that Mr. Parks's appeal is "not-yet-filed." Dkt. 112 at 2. Mr. Parks timely filed his notice of appeal

1

## I. Mr. Parks poses no flight or safety risk.

Less than three months ago, in November 2023, this Court held the following: "I will allow Mr. Parks to self-surrender, given his complete compliance of pretrial conditions, and I don't find that he is a threat to the community." Sentencing Tr. at 78:17-20 (Nov. 15, 2023). For all the reasons identified in his motion for release pending appeal—including his compliance with release conditions, ties to his community, and lack of any history of violence—that conclusion was, and still is, correct. In response, the government does not contest that Mr. Parks presents no flight risk. Rather, somewhat incredibly, it suggests that Mr. Parks poses a danger to the safety of the community. This assertion is flatly inconsistent with this Court's November finding. Moreover, this Court would not have allowed Mr. Parks to remain in the community since his initial appearance in June 2021 if it thought he posed a risk to public safety. The *Griffin* appeal has been under advisement for nearly two months already, and so the D.C. Circuit should issue a decision relatively soon. If allowed to remain in the community pending that decision, Mr. Parks will pose no more danger to the community than he has posed over these last 31 months.

The government's public safety arguments are utterly divorced from this Court's consideration of whether Mr. Parks is a threat to his community. First, as the government is forced to concede, Mr. Parks "has been compliant with the terms

---

two days after this Court issued judgment, Dkt. 107, and the D.C. Circuit has since set a briefing schedule for his appeal, *see* No. 23-3222 (D.C. Cir.).

of his release, and Parks himself did not engage in hands-on violence on January 6, 2021." Dkt. 112 at 3.  The government argues that Mr. Parks watched other people commit violence and that he entered and remained in the Capitol but fails to bridge the gap between Mr. Parks's entirely nonviolent behavior on January 6 and a risk that he will turn dangerous in the future.  *See, e.g.*, *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir.) ("That Munchel and Eisenhart assaulted no one on January 6; that they did not enter the Capitol by force; and that they vandalized no property are all factors that weigh against a finding that either pose a threat of 'using force to promote their political ends[.]'").  Indeed, if Mr. Parks was able to control himself and avoid any violent activity on January 6 itself, there is no reason to think that now, three years later – having been convicted and facing possible imprisonment for that nonviolent conduct – Mr. Parks suddenly poses a risk to the safety of community.

Second, the government points to Mr. Parks's trial testimony and statements he has made since, but none of those statements support violence or suggest that Mr. Parks might turn to violence.  Even if this Court agrees with the government that such statements demonstrate a lack of veracity or acceptance of responsibility, the government does not claim that they reflect any change in Mr. Parks's acceptance of responsibility that has taken place since this Court explicitly declined to find him a "threat to the community" in November 2023.

## II. Mr. Parks's appeal meets the standard for a substantial question of law.

The government does not dispute that the question posed by Mr. Parks's appeal—whether the government must prove that the defendant knew that then-Vice President Pence "[wa]s or w[ould] be temporarily visiting" the Capitol on January 6 in order to sustain convictions under 18 U.S.C. § 1752—is a substantial question of law. That concession is sensible: three Judges on this Court have answered that question in favor of January 6 defendants, *see* Dkt. 111 at 8-12, and at least one other has ordered further briefing on this issue, *see* Dkt. 102 at 1, *United States v. Irwin, et al.*, No. 21-cr-589-RDM. Rather, the government contends that Mr. Parks would not benefit from a favorable ruling on that question of law because of the standard of review on appeal. In particular, it argues that Mr. Parks is not likely to succeed on his appeal because he failed to object to this Court's knowledge instruction at trial and accordingly would lose under either plain error or sufficiency review. Not so.

As an initial matter, as explained in his motion for release pending appeal, the Court need not conclude at this stage that Mr. Parks's appeal is actually likely to succeed. Dkt. 111 at 5-6. Rather, the Court should grant release pending appeal if it finds that (1) the appeal raises a substantial question; and (2) resolution of that question *in the defendant's favor* likely would lead to one of the options enumerated in § 3143(b)(1)(B). *See United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam). Under either a sufficiency challenge or plain error review of this Court's legal instruction, Mr. Parks's appeal at least raises a substantial question.

4

First, the government does not contest that Mr. Parks preserved a sufficiency challenge. The Court of Appeals will review that challenge *de novo*. *See United States v. Robinson*, 68 F.4th 1340, 1346 (D.C. Cir. 2023). As to the merits of Mr. Parks's sufficiency challenge, a substantial question is presented where, at a minimum, reasonable jurists could differ as to whether the government failed to present sufficient evidence for a factfinder to find Mr. Parks's knowledge of the Vice President's presence beyond a reasonable doubt. In its opposition, the government points to only two pieces of evidence that it claims "establish[] that Parks knew the Vice President would be at the Capitol that day": Mr. Parks's post that he was attending the "Stop the Steal" rally and his trial testimony that he was aware that "'the House and the Senate would be meeting and they would be moving forward with the election result from 2020.'" Dkt. 112 at 6 (quoting Trial Tr., May 2, 2023 at 137).[2] Applying a beyond a reasonable doubt standard, this evidence could at most establish that Mr. Parks had a vague understanding of what was happening in the Capitol that day. The leap from that conclusion to assuming Mr. Parks must have known that the Vice President is the president of the Senate and had a role in the inner workings of the electoral college vote count that day that would place the Vice President

---

[2] In its opposition, the government states that "Parks traveled to Washington, D.C., in order to attend the 'Stop the Steal' rally, GX 531 – where the former President referenced the certification proceeding set to happen at the Capitol that day." Dkt. 112 at 6. What the government does not mention is that Mr. Parks testified that he did not actually make it to the former President's speech and could not make out what was being said at that event. *See* Dkt. 111 at 14 (citing Trial Tr. at 280:10-17).

5

physically in the Capitol is arguably too big for a rational factfinder to make beyond a reasonable doubt. Again, this Court need only address whether there is a close question for appeal, not whether Mr. Parks is likely to win.

And should Mr. Parks face plain error review on a challenge to this Court's legal instruction at trial, he has a very good chance at succeeding. Recall that the D.C. Circuit is considering this question in *United States v. Griffin*, No. 22-3042, which is fully briefed and argued. Accordingly, should the D.C. Circuit rule in the defendant's favor in *Griffin*, it presumably would do so before ruling on this issue in Mr. Parks's appeal, which is still in its early stages. And, as the Supreme Court has made clear, "as long as the error was plain as of . . . the time of appellate review[,] the error is 'plain' within the meaning of [Fed. Rule Crim. Proc. 52(b)]." *Henderson v. United States*, 568 U.S. 266, 269 (2013). Accordingly, the government's citation to *United States v. Brown*, 892 F.3d 385, 393 (D.C. Cir. 2018), which addressed plain error review of jury instructions where "there is no precedent of the Supreme Court or this court" is inapt: in Mr. Parks's case, there will be D.C. Circuit precedent on this issue by the time the Circuit addresses his appeal, which (assuming it favors Mr. Parks) would render the error "plain" under *Henderson*.

To establish plain error, Mr. Parks will also need to establish that there is a "reasonable probability that, but for the error, the outcome of the proceeding would have been different" and that "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S.

6

Ct. 1897, 1904-05 (2018) (internal citations and quotation marks omitted). Assuming the D.C. Circuit rules for the defendant in *Griffin*, that standard should be easy to meet. Regardless of the outcome of Mr. Parks's sufficiency challenge, there is ample reason to question whether *this Court* would have found that Mr. Parks knew of the Vice President's presence in the Capitol beyond a reasonable doubt at Mr. Parks's bench trial. Accordingly, there is good reason to think Mr. Parks would have been found not guilty on his two § 1752 convictions.

Judge Cooper's not-guilty verdict in *United States v. Groseclose*, No. 21-CR-311 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024), is instructive. In that case, Judge Cooper previously had found, in convicting Mr. Groseclose under 18 U.S.C. § 1512(c)(2), that Mr. Groseclose "intend[ed] to obstruct the proceedings related to the 2020 presidential election that were taking place on January 6." *Id.* at *10. But that finding was not sufficient to hold that Mr. Groseclose knew that "Vice President Pence was presiding over the joint session of Congress" to find him guilty under § 1752. *Id.* For example, there was no evidence that Mr. Groseclose (1) knew about the Vice President's role ahead of January 6; (2) "heard any of President Trump's speech, let alone the sections referencing the Vice President"; or (3) heard other rioters' threats to 'hang Mike Pence' or any similar messages." *Id.* at *9. Likewise, here, the government has pointed to evidence that at most suggests Mr. Parks was aware that there were proceedings related to the electoral college vote happening that

day—not that he knew that the Vice President would be present or had any part in those proceedings.

### III. A favorable decision on this issue is likely to result in a sentence that does not include a term of imprisonment.

As explained in his motion, Mr. Parks's sentence absent the § 1752 counts likely would be "less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv).  Indeed, because a victory likely would result in "a sentence that does not include a term of imprisonment," *id.* at § 3143(b)(1)(B)(iii), Mr. Parks should be permitted to remain on release pending the outcome of his appeal.

The government argues that, even if the two § 1752 convictions are reversed, Mr. Parks's sentence should remain at eight months.  Dkt. 112 at 10.  But the government completely fails to grapple with the significantly lowered Guidelines range Mr. Parks would face at resentencing, never even acknowledging either the original range or the range that will apply if he prevails on appeal.  At his original sentencing, Mr. Parks faced a Guidelines range of 8-14 months.  Sentencing Tr. at 37:16.  This Court, considering the factors the government points to—including Mr. Parks's conduct on January 6 and his trial testimony—imposed a low-end sentence of 8 months.  *Id.* at 75:7.  If Mr. Parks successfully reverses the § 1752 convictions, the range would be just 0-6 months, and the same low-end sentence would require no jail time. Dkt. 111 at 15-16.  There is no basis for the government's suggestion that this Court would not only abandon the thinking that led it to a low-end sentence

originally but actually vary upwards from the Guidelines to 8 months. *See United States v. Adams*, No. 21-CR-354 (APM), 2024 WL 111802, at *3 (D.D.C. Jan. 10, 2024) ("But that position overlooks the revised Sentencing Guidelines range.").

The government does not appear to dispute that, regarding the theft charge, Mr. Parks's relatively minor conduct is unlikely to result in significant jail time. *See* Dkt. 112 at 7 (describing the conduct underlying Count Five as "a fifteen-minute period when he picked up and carried around a United States Capitol Police metal detector wand"). As to the petty offenses, the government ignores that this Court will be selecting its new sentence with an eye to avoiding unwarranted sentencing disparities. *Adams*, 2024 WL 111802, at *3; 18 U.S.C. § 3553(a)(6). When sentencing on the January 6 petty offenses under 40 U.S.C. § 5104, this Court has given non-custodial sentences or *very* short terms of incarceration.[3] Considering the likelihood that Mr. Parks will be facing a new Guidelines range of 0-6 months, as well as the

---

[3] *See, e.g., United States v. Seymour, et al.*, No. 22-cr-41-APM (12 months' probation each); *United States v. Ferguson*, No. 22-cr-194-APM (24 months' probation); *United States v. Lolos*, No. 21-cr-243-APM (14 days' incarceration); *United States v. Wilson et al.*, No. 21-cr-578-APM (a period of home detention and 24 months' probation for each); *United States v. Rebegila*, No. 21-cr-283-APM (30 days' home detention and 24 months' probation); *United States v. Cavanaugh*, No. 21-cr-362-APM (24 months' probation); *United States v. Watson*, No. 21-cr-422-APM (7 days' incarceration and 24 months' probation); *United States v. Vollan, et al.*, No. 22-cr-44 (two defendants received 12 months' probation; the third also received 21 days' incarceration); *United States v. Clark et al.*, No. 21-cr-218-APM (24 months' probation for each; the third defendant also received 45 days' home detention); *United States v. Gross*, No. 22-cr-56-APM (24 months' probation with 45 days' home detention); *United States v. Grover*, No. 21-cr-374-APM (24 months' probation with 30 days' home detention); *United States v. Escalera*, No. 22-cr-364-APM (24 months' probation with 7 days' intermittent confinement).

need to avoid a sentencing disparity, then, this Court should not assume that Mr. Parks will receive any jail time if he wins his appeal and should therefore allow him to remain on release pending resolution of the § 1752 *mens rea* issue before the D.C. Circuit in *Griffin*.

Even if this Court thinks it might sentence Mr. Parks to a short period of incarceration on his remaining misdemeanors, Mr. Parks would ask the Court to exercise its discretion and delay his self-surrender date. In the event *Griffin* disfavors Mr. Parks, requiring him to serve a period of incarceration, spend a short time on release pending *Griffin*, and then return to prison is more punitive than necessary. Rather, waiting for the outcome in *Griffin* before requiring Mr. Parks to self-report would ensure both that he does not overserve his sentence (in the event of a reversal in *Griffin*) and that he does not suffer the additional punishment and psychological toll associated with breaking one sentence into two prison terms (in the event of a *Griffin* affirmance).

## Conclusion

For these reasons, Mr. Parks respectfully moves for release pending appeal.

Respectfully Submitted,

A. J. KRAMER

Federal Public Defender for the
District of Columbia

by:_____s/_____
Molly Runkle

                                      Assistant Federal Public Defender
                                      625 Indiana Avenue, NW
                                      Washington D.C. 20004
                                      202-208-7500
                                      molly_runkle@fd.org